IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| INEZ WILLIAMS-BELHOUANE, | ) | CASE NO.  1:12 CV 1021 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| CUYAHOGA COUNTY, | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Defendant. | ) | |
| | ) | |

This case is before the Court on Defendant's Motion for Summary Judgment.  (ECF #7). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant, Cuyahoga County ("the County"),  has petitioned the Court for summary judgment dismissing Plaintiff, Inez Williams–Belhouane's claims, which stem from allegations of discrimination based on disability.  Plaintiff filed an Opposition to Defendant's Motion for Summary Judgment (ECF #12), and Defendant filed a Reply in support.  (ECF #13).  Having reviewed all of the parties' submissions and the relevant law, and for the reasons set forth below, Defendant's motion is GRANTED.

**Factual and Procedural Background**[1]

Plaintiff Inez Williams-Belhouane ("Plaintiff") filed the instant action against her former employer, Cuyahoga County in April of 2012.  In the Complaint ("Complaint"), Ms. Williams-Belhouane claims that she was fired from her position at the County in violation of Title I of the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.* and the Rehabilitation Act, 29 U.S.C. 701, *et. seq.*, and in violation of Chapter 4112 of the Ohio Revised Code.  She also asserted a claim for termination in violation of public policy under Ohio law.  Plaintiff is seeking reinstatement, as well as back pay and lost benefits.

The parties do not dispute that Ms. Williams-Belhouane was in the position of "Social Service Aide" ("Aide") in the Visitation Department of the County's Department of Children and Family Services.  They do not dispute that this job generally requires the Aides to spend 50% of their time driving and picking up children, and 50% of their time on other aspects of the position including monitoring or supervising various aspects of supervised visitation.  Further the parties agree that Ms. Williams-Belhouane is no longer physically capable of driving or lifting children, due the effects of a long standing illness.   Prior to January of 2009, when a new Director was appointed to oversee the Department, Ms. Williams-Belhouane, along with other employees hired as Aides who for various reasons were either temporarily or permanently precluded from driving, was allowed to remain in her job without driving or lifting children.  Plaintiff, and other employees, were allowed to perform only the non-driving/lifting functions of the job and other employees were asked to fill in for them, or trade assignments, when they

---

[1] Any facts set forth in this section are based upon the parties' statements of facts.  Those material facts which are contested and supported by deposition testimony, affidavit, or other evidence are stated in a light most favorable to Plaintiff, the non-moving party.

would otherwise have been scheduled to drive. In January of 2009, the new director put an end to these reassignment of duties, and instituted an across-the-board policy that required workers to fulfill all of the stated duties of their job, or face termination.

The Defendant contends that Ms. Williams-Belhouane cannot recover under any of the alleged theories because she was not qualified to perform the essential functions of her job (i.e. driving and lifting), either with or without accommodations, at the time of her termination. Plaintiff claims that she could, and in fact, had been, performing many aspects of her position, and that it was unreasonable not to allow her to continue in the job doing those tasks that she was physically capable of performing. The sole question before the Court is whether driving and/or lifting children was an essential function of the employment position that Ms. Williams-Belhouane held at the time of her termination.

### **Summary Judgment Standard**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## **Analysis**

To establish a prima facie case for failure to accommodate under the ADA, an employee must show that: (1) she is an individual with a disability; (2) she is otherwise qualified to perform the job requirements, with or without reasonable accommodation; and (3) she was discriminated against solely on the basis of her disability. *Baker v. Windsor Republic Doors*, No. 08-6200, 414 Fed. Appx. 764, 770, 2011 WL 805768 (6th Cir. Mar. 8, 2011); *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008); 42 U.S.C. §12101(2). An employee's disability claim should be dismissed if the employee failed to identify and request a reasonable accommodation. *Tubbs v. Formica Corp.*, 107 Fed.Appx. 485 (6th Cir. 2004); *Hankins v. The Gap, Inc.*, 84 F.3d 797, 802 (6th Cir. 1996)(citing 29 C.F.R. §1630.9(d)).

Under Section 504 of the Rehabilitation Act of 1973, an employer who receives Federal financial assistance is prohibited from discriminating against an "otherwise qualified individual with a disability... solely by reason of her or his disability." 29 U.S.C. § 794(a). The same analysis made under the ADA applies to claims made under the Rehabilitation Act and claims made pursuant to the Ohio Revised Code § 4112.02. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010); *Kleiber v. Honda of Am. Mfg., Inc*., 485 F.3d 862, 872 (6th Cir. 2007);

*Doe v. Woodford Cty. Bd. Of Educ.*, 213 F.3d 921, 925 (6th Cir. 2000).

To be qualified for a position under the ADA, an individual must be able to perform the essential functions of the employment position, with or without accommodation. 42 U.S.C. § 12111(8). Essential functions are "fundamental job duties of the employment position the individual with a disability holds." 29 C.F.R. § 1630.2(n)(1). The Code of Federal Regulations states that a job function may be "essential" for any of several reasons including (1) the reason the position exists is to perform the function, and (2) there are a limited number of employees available among whom the job can be distributed. 29 C.F.R. §1630.2(n)(2).

Plaintiff's Complaint alleges that she is a "qualified individual with a disability" as defined in 42 U.S.C. §1211(8) and Chapter 4112 of the Ohio Revised Code. However, all of the evidence, and Plaintiff's own testimony establish that driving and lifting children and/or car seats is an essential function of the job that she cannot perform either with or without an accommodation. The ADA states that consideration "shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8); *Roetter v. Michigan Dept. Of Corrections*, No. 10-1952, 456 Fed. Appx. 566, 570, 2012 WL 181387 (6th Cir. Jan. 23, 2012). Other considerations include: the amount of time spent on the job performing the function, the consequences of not requiring the incumbent to perform the function; the terms of a collective bargaining agreement; the work experience of past incumbents; and the current work experience of incumbents in similar jobs.

Plaintiff herself explained that in her original position as a case aide she helped the

County's social workers by picking up children for visitations or appointments and transporting them to different places.  (Pl. Depo. at 47).  When that position was merged with the general visitation unit and became a "Social Service Aide," the aides no longer worked for the social workers but the job was still "basically picking up children and bringing them to the county for visits and or taking them to another site for a visit...." (Pl. Depo. at 57-60).  At Old Brooklyn, one of the two locations for Social Service Aides, seven aides had rotating duties which were half driving and half monitoring visits.  "You were one week monitor, one week driver."  (Pl. Depo. at 66-67).  Ms. Williams-Belhouane reaffirmed this understanding in her sworn statement to the Ohio Public Employees Retirement System when she attested "[m]y job duties required me to regularly lift and carry children to and from a county transport vehicle. . . As a Social Service aide (2), 50% of my job was driving or handling of children."  (Init. Discl. pg. 12).  In addition to Ms. Williams-Belhouane's own testimony, the written job description for this position described the transporting of children as one of the most important job duties, comprising 50% of the work for the position.  Further, the Director of the Department, expressing the employer's judgment as to the essential functions of the job stated that being able to transport children to visitation, including the driving and lifting of children, was an essential function of this job.

      Plaintiff argues that there would have been no significant negative consequences if she were allowed to forego the driving and lifting requirements of her position because other workers would be willing and/or able to fill in to accomplish those duties.  She, however, presents no evidence that any of the other considerations weigh against a finding that the driving and lifting requirements are essential functions of the job.  Further, the County has provided

testimony that indicates the consequences of allowing Aides to opt out of the driving requirement would negatively affect the County's ability to staff the position and ensure that driver's would be available when needed to facilitate visitation for the children.

Ms. Williams-Belhouane's requested "accommodation" would not allow her to perform the essential functions of the job, it would allow her to avoid having to perform them, and would require the County to either eliminate or reallocate those duties. The ADA does not require it to eliminate or reallocate essential job functions in order to accommodate an employee with a disability. *Otto v. City of Victoria*, 685 F.3d 755, 759 (8th Cir. 2012); *Hoskins v. Oakland Cty. Sheriff's Dept*. , 227 F.3d 719, 729-31 (6th Cir. 2000). Therefore, eliminating the driving and lifting duties was not a reasonable accommodation for a Social Services Aide. In so far as all parties agree that she is incapable of driving or lifting children due to her disability and that there is no accommodation that could have been offered that would have allowed her to perform those duties, she is not qualified to perform the function of Social Services Aide with or without a "reasonable" accommodation.

## **Conclusion**

For the reasons set forth above, Defendant's Motion for Summary Judgment (ECF #7) is GRANTED. IT IS SO ORDERED.

    /s/ Donald C. Nugent  
DONALD C. NUGENT  
United States District Judge

DATED:  October 31, 2012